## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 05 2017, 10:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of: C.H. (Minor Child) | October 5, 2017 |
| | Court of Appeals Case No. 49A04-1705-JT-1144 |
| C.C. (Father), | Appeal from the Marion Superior Court |
| *Appellant-Respondent,* | |
| v. | The Honorable Marilyn A. Moores, Judge The Honorable Larry E. Bradley, Magistrate |
| The Indiana Department of Child Services, | Trial Court Cause No. 49D09-1609-JT-1070 |
| *Appellee-Petitioner* | |

**Baker, Judge.**

[1] C.C. (Father) appeals the juvenile court's order terminating his parent-child relationship with C.H. (Child). Father argues that there is insufficient evidence supporting the juvenile court's conclusion that continuation of the parent-child relationship poses a threat to Child's well-being. Finding the evidence sufficient, we affirm.

# Facts

[2] On May 31, 2012, Child was born to Father and Ce.H. (Mother).[1] At birth, Child's meconium tested positive for illegal substances. As a result, the Department of Child Services (DCS) became involved with the family. Mother and Father entered into a program of Informal Adjustment (IA) to address substance use, and the IA closed successfully on May 1, 2013. Mother and Child resided with Child's Maternal Grandmother as a condition of the IA; as soon as the IA closed, Mother and Child moved in with Father.

[3] In 2013, Child and parents moved at least twice; one of those moves occurred after the parents were evicted from their residence for failing to make timely rent payments. At some point during that year, conflict arose in the parents' relationship and they resumed using illegal drugs.

---

[1] Mother has consented to Child's adoption and is not a party to this appeal.

[4]     In May 2015, the parents asked Child's Paternal Grandmother to care for Child.[2] Paternal Grandmother has a history of dealing in illicit substances, a history of substance abuse, and a current prescription for suboxone—a medication used to help wean people off addictive substances.

[5]     On September 19, 2015, DCS filed a petition alleging that Child was a Child in Need of Services (CHINS) because of parents' drug use, unstable housing, and failure to care for Child. At the initial hearing, Child was removed from Paternal Grandmother and placed with Maternal Grandmother. Child has been placed with Maternal Grandmother since that time, and Maternal Grandmother plans to adopt Child if the termination order becomes final. On September 25, 2015, Father admitted that Child was a CHINS because Father needed "assistance maintaining a stable home free from substance abuse . . . ." DCS Ex. 20 p.2. The CHINS court ordered Father to submit to random drug screens, to complete substance abuse and parenting assessments and comply with any recommendations stemming from those assessments, and to complete home based therapy and case management.

[6]     At the time the CHINS petition was filed, Child was defiant, oppositional, disruptive, and inappropriate. The three-year-old was not potty-trained and had become dependent on suppositories to defecate. Child was placed in therapy, and her therapist diagnosed her with general anxiety disorder, separation

---

[2] Father claims that they granted "temporary legal guardianship" to Paternal Grandmother, but there is no documentation in the record establishing that any action was taken in a court of law. Appellant's Br. p. 8.

anxiety disorder, and oppositional defiant disorder. Child's therapist found that Child was inappropriately clingy and afraid to be away from Maternal Grandmother, that Child's anxiety about Mother's safety was very high, and that her fear of abandonment by a caregiver was significant.

[7] Generally, the therapist testified that Child has experienced trauma as a result of "not having consistency and stability in her life and . . . being fearful and uncertain that people are going to stay." Tr. p. 12. While in therapy, Child made progress towards goals of decreasing negative behaviors and dealing with issues related to separation anxiety. The therapist believed that the progress was the result of the "consistency and the stability" in her living environment with Maternal Grandmother, *id.* at 16, and that Child experienced significant regressions in behavior "when visits started and ended with her dad," *id.* When Child regressed, "[s]he started defecating on herself quite a bit. More tantrums and more defiance and more opposition." *Id.* The therapist testified that Child needs "that stability and that consistency, that is really important. She needs to feel secure and safe." *Id.* at 17. If Child did not have stability and consistency, she would be harmed because "it would be difficult for her to learn how to function in a normal way if she constantly has anxiety and doesn't feel safe and secure where she is." *Id.* at 20.

[8] The therapist testified that Father never completed the parenting assessment and did not stay in contact about Child's therapy. The therapist had not heard from Father between May 2016 and the time of the termination hearing in March 2017. As a result of the lack of contact with Father, the therapist was

unable to determine whether there was a bond between Father and Child or whether there were appropriate interactions between them.

[9] During the CHINS case, Father did not submit to regular random drug screens, though he did so sporadically. He was discharged from home based therapy and case management for failure to participate. He started a parenting assessment but did not complete it.

[10] Father was using illegal substances when the case opened, continued to use until early 2016, was sober for three months, resumed using in the summer of 2016, and last used when he was participating in substance abuse treatment in November 2016. Although he technically completed an intensive outpatient program, DCS did not believe he had completed it successfully because he admitted that he had used heroin and/or prescription drugs for which he did not have a prescription during the program. At the time of the termination hearing, Father was successfully participating in a relapse prevention program and individual therapy.

[11] During the CHINS case, Father's parenting time with Child has always been supervised. His parenting time has been suspended twice—first, in January 2016, after Father admitted to ongoing substance abuse. His visits were reinstated after thirty days of consistent participation in services and negative drug screens. His visits again ceased in May 2016 and were officially suspended in September 2016 after Father provided positive drug screens and admitted that he had relapsed. Tr. p. 62. He was not able to provide thirty

days of consistent participation in services and negative drug screens after that time, so at the time of the March 2017 termination hearing, he had not seen Child since May 2016.

[12] In September 2016, the CHINS court changed Child's permanency plan to adoption over Father's objection because, among other things, Father "has been sporadic in his participation in services and is still testing positive for illicit substances." DCS Ex. 7 p.2. On September 26, 2016, DCS filed a petition to terminate the parent-child relationship between Father and Child. The juvenile court held an evidentiary hearing on the petition on March 8 and April 13, 2017. On May 5, 2017, the juvenile court granted the petition, finding, in relevant part, as follows:

> 11. [Father] completed two intensive outpatient programs but lapsed at least three times in 2016. His last lapse, with opiates, did occur at the end of his intensive outpatient substance abuse program.
>
> ***
>
> 17. [Father] has not maintained independent stable housing, and is currently residing with a roommate without a lease.
>
> ***
>
> 21. [Father] has not seen [Child] since May of 2016. He has not requested visits although he did participate in services.

22. [Child] has had weekly therapy sessions for the past year with India Anderson to decrease her display of negative behavior, and to explore trauma.

23. [Child] presented to her therapist with oppositional defiance disorder and separation anxiety.

24. Therapist Anderson believes [Child] would regress from progress if visits with [Father] started and stopped again.

25. [Father] has not contacted [Child's] therapist since May of 2016.

26. [Child] has been placed with her maternal grandmother for the past eighteen months. She has been around her grandmother her whole life and [s]pent the first eight months of her life residing in grandmother's home.

27. [Father] has not contacted grandmother to inquire as to [Child's] well-being.

***

29. [Child] needs to feel safe and secure to thrive. Grandmother is providing the needed consistency, stability, love and special attention [Child] requires.

30. [Child] has been observed as being attached and bonded with her grandmother.

31. The Court cannot find that a parent-child bond exists between [Child] and [Father] at this time.

32. Continuation of the parent-child relationship poses a threat to [Child's] well-being in that it would pose as a barrier to obtaining permanency for her in a stable and consistent environment and one where she has bonded and is having all her needs, including special needs[,] met.

\*\*\*

34. Based on [Father's] inconsistency over time, and the progress [Child] has made in her stable placement, [Child's] Guardian ad Litem recommends adoption as being in [Child's] best interests.

35. Termination is in the best interests of [Child]. Termination would allow her to be adopted into a stable and permanent home where she can continue to progress and have her needs met.

Appellant's App. p. 17-18. Father now appeals.

# Discussion and Decision

## I. Standard of Review

[13] Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial

court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

[14] Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

    (A)    that one (1) of the following is true:

        (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

        (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

        (iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)      that one (1) of the following is true:

      (i)      There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

      (ii)      There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

      (iii)      The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)      that termination is in the best interests of the child; and

(D)      that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

[15]      Father's only argument on appeal is that there is insufficient evidence supporting the trial court's conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to Child's well-being.  Therefore, we need not and will not consider the trial court's conclusions that termination is in Child's best interests or that the remaining statutory elements have been satisfactorily met.

# II. Threat to Child's Well-Being

It is well established that a trial court need not wait until a child's physical, mental, and social growth are permanently impaired before terminating the parent-child relationship. *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002). Therefore, termination is appropriate "[w]hen the evidence shows that the emotional and physical development of a [CHINS] is threatened . . . ." *Id.* In evaluating whether the continuation of the parent-child relationship poses a threat to the child, a trial court "should consider a parent's habitual pattern of conduct to determine whether there is a substantial probability of future neglect or deprivation" while also judging a parent's fitness to care for his child as of the time of the termination proceedings, taking into consideration evidence of changed conditions. *In re A.P.*, 981 N.E.2d 75, 81 (Ind. Ct. App. 2012).

In this case, there is a wealth of evidence that Child's emotional and physical development are threatened if her relationship with Father continues. The instability of her first few years of life resulted in a variety of diagnoses, including separation anxiety disorder and oppositional defiant disorder, and in significant challenges related to toilet training. With regular therapy and a stable home environment, Child's physical and emotional health began to improve in many ways, but she experienced significant regressions whenever visits with Father resumed. Child's therapist testified that if Child did not have stability and consistency in her life, she would be harmed because "it would be difficult for her to learn how to function in a normal way if she constantly has anxiety and doesn't feel safe and secure where she is." Tr. p. 20.

[18]     And even as Child desperately needs stability and consistency, the record reveals that Father has a history of neither. During the CHINS case, he participated inconsistently with most court-ordered services, with multiple services being closed out unsuccessfully because of his lack of participation. Furthermore, although he completed substance abuse treatment, he relapsed at least three times during the life of the CHINS case. The longest period of time during which he was able to maintain sobriety was three months. Father also has a history of unstable housing, and while he had a place to live at the time of the termination hearing, he was not on a lease and was living with his mother, who has a history of dealing in illicit substances, a history of substance abuse, and a current prescription for suboxone.

[19]     The record also reveals that Father and Child did not have a significant bond by the time of the termination hearing. When she was removed from his care and custody at the beginning of the CHINS case, she had lived with a grandparent for more than half of her life. And during the CHINS case, Father's visits were suspended twice because of his ongoing substance abuse. Although he completed the court-ordered requirements after the first suspension such that visits were reinstated, he was unable to fulfill those same requirements after the second suspension. Therefore, his visits were not reinstated, and at the time of the termination hearing, he had not seen Child for the previous ten months. He attended only two of the many child and family team meetings during the CHINS case and did not make a significant effort to stay in touch with Child's therapist or Maternal Grandmother.

[20] We acknowledge and applaud the success Father seems to have had in the few months leading up to the termination hearing. He was participating in individual therapy and a relapse prevention program, apparently achieving success in both arenas. Unfortunately, however, he failed to take advantage of the opportunity to show an ability to maintain such successes and stability over a longer period of time during the CHINS case. The juvenile court was reasonable in concluding that Father's long history of instability and inconsistency outweighs the recent gains he had made at the time of the termination hearing. Given Child's need for stability and consistency and Father's inability to assure either, the juvenile court did not err by finding that DCS had proved by clear and convincing evidence that the continuation of the parent-child relationship posed a threat to Child's well-being. In other words, we find the evidence sufficient to support the juvenile court's termination order.

[21] The judgment of the juvenile court is affirmed.

Bailey, J., and Altice, J., concur.